UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.  3:16-CR-080 JD |
| | ) | 3:19-CV-544 JD |
| JOHNNY JONES | ) | |

## OPINION AND ORDER

Defendant Johnny Jones was convicted of trafficking methamphetamine. He has filed a

motion to vacate his conviction under § 2255, arguing that the evidence was insufficient to

support his conviction and that his trial counsel and appellate counsel were ineffective. The

Court disagrees, so it denies Mr. Jones' motion.

## I.  FACTUAL BACKGROUND

On Mr. Jones' direct appeal, the court of appeals recounted the relevant facts as follows:

In February or March 2016, Jones and his girlfriend, Jennai [*sic*] Rowland, moved
to Benton Harbor, Michigan, staying in various hotels and, on occasion, with Jones'
cousin, Stephanie [*sic*] Smith. Jones and Rowland used Smith's address as their
own. Hard times had befallen Smith and she joined with Jones and Rowland to sell
drugs, particularly methamphetamine. Smith's role was to find buyers and connect
them to Jones and Rowland. Jones and Rowland controlled the business. They set
the prices, authorized transactions, and provided instructions for meeting—
communicating with Smith by way of text messages or in person. When Smith
found a buyer, she would contact Jones or Rowland, and then obtain the
methamphetamine from Rowland. Sometimes Jones would be present at these
transactions and give the go-ahead for the sale; sometimes Rowland would arrive
alone. After selling the methamphetamine, Smith would give the buyers' money to
Rowland or Jones. When Smith needed to earn more money, she would send a text
message to Jones' phone asking that he send more customers her way.

From May 2 through August 8, 2016, an undercover police officer purchased
approximately 60 grams of methamphetamine from Smith over the course of six
controlled buys. (A single "dose" of methamphetamine is usually about a half of a
gram). For each transaction, Smith would contact Rowland and Jones and obtain
the drugs from them.

The conspiracy unraveled on August 30, 2016, after a final controlled buy. On that
day, Smith agreed to sell the undercover officer eight ounces (226.8 gm) of
methamphetamine at a Walmart parking lot in Niles, Michigan, a few miles north

of the Indiana boarder. She arrived with only two ounces (56.7 gm) of methamphetamine, but offered to travel to South Bend for the remaining six ounces.

Smith left the two ounces of methamphetamine with the undercover officer in exchange for $2,000 cash (the serial numbers of which had been pre-recorded by the police). She then drove to South Bend where she met Jones, Rowland, and Jones' mother at a hotel. After Smith explained to Jones and Rowland that she needed more methamphetamine, Jones told Rowland to "[g]et her what she need." R. 185 at 104. The four then walked out of the hotel to a silver Mustang. As they walked out, Jones' mother pointed out that Rowland had a gun hanging out of her purse. Jones was irritated that the gun was not properly concealed and pushed it back down into Rowland's purse.

With Jones present, Rowland gave Smith two more ounces of methamphetamine. Smith gave $1,500 of the undercover officer's money to Jones and he allowed her to keep the remaining $500. Smith then returned to the Walmart parking lot where law enforcement officers arrested her.

Meanwhile, investigators followed the silver Mustang to a mall parking lot where it approached a blue Buick, stopping driver's side to driver's side. Investigators followed the car but could not hear the conversation or see anything inside the Mustang, but they could see that someone tossed two baggies containing a golf-ball-sized white substance from the Mustang's driver's side window to the Buick, and someone from the Buick got out of the car and handed a bundle of cash into the Mustang's driver's side window. Immediately after the transaction, investigators stopped the Mustang and arrested Jones, who was driving, and Rowland, the front seat passenger. Jones had $1,500 in pre-recorded money from the undercover agent in his pocket and an additional $2,400 in cash. In a purse that Rowland had on her lap at the time of the stop, investigators found "one fairly small package" of methamphetamine and a loaded .380 caliber pistol. R. 185 at 136, 155–56. Investigators did not find any of Jones' fingerprints on the gun, but did find them on the magazine inside the weapon. They also found a plastic grocery bag in the back seat which contained 53.8 grams of marijuana, two packages of methamphetamine, empty baggies, and a digital scale. They also found another digital scale and two cell phones in the car's center console area. . . .

One of the cell phones found in the search of the Mustang was linked to the phone number that Smith used to communicate with Jones. This phone was also the phone used in text message exchanges with Rowland's phone, including a message sent on July 26, 2016, from Rowland's phone, which said "Meet the newest member of our family...." along with a picture of the .380 caliber pistol posed with a bundle of cash. R. 186 at 32.

A grand jury charged Smith, Rowland, and Jones with multiple drug related crimes. Jones' indictment charged him with conspiring to distribute over 50 grams of methamphetamine in violation of 21 U.S.C. § 846; possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §

2; and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). . . .

. . . .

. . . [T]he jurors returned a verdict convicting Jones of conspiring to distribute over 50 grams of methamphetamine and possessing with intent to distribute methamphetamine. The jury acquitted Jones of possessing a firearm in furtherance of a drug trafficking crime.

*United States v. Jones*, 900 F.3d 440, 442–44 (7th Cir. 2018) (footnotes omitted).

Mr. Jones chose to represent himself at sentencing, and received a sentence of 145 months of imprisonment. He then filed a direct appeal, for which he was appointed counsel. On appeal, counsel challenged Mr. Jones' sentence, contesting the Court's drug quantity calculation and its application of a firearm enhancement. However, the court of appeals affirmed Mr. Jones' sentence. *Jones*, 900 F.3d at 449. Mr. Jones then filed a motion under § 2255 in this Court, seeking to vacate his conviction. That motion has been fully briefed.

## II.  STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

# III. DISCUSSION

Mr. Jones raises three arguments in support of his motion. First, he argues that there was insufficient evidence to support his conspiracy conviction (and that his trial and appellate counsel were ineffective for failing to argue that point). Second, he argues that his trial counsel was ineffective for failing to move to suppress evidence from a search of his cell phone. Third, he argues that his appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness. The Court addresses each in turn.

## A.    Sufficiency of the Evidence

Mr. Jones first argues that the government offered insufficient evidence to prove that he was part of a conspiracy to distribute methamphetamine, as charged in Count 1. He asserts that theory in multiple forms: as a standalone claim, as an argument that his trial counsel was ineffective for failing to move for judgment of acquittal under Rule 29, and as an argument that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on appeal. Those arguments all fail for the same reason—the evidence was more than sufficient to support a conclusion that Mr. Jones was guilty of conspiring to distribute methamphetamine.

To prove Mr. Jones guilty of conspiracy, the government had to prove that two or more people agreed to distribute methamphetamine, and that Mr. Jones knowingly and intentionally joined in the agreement. *United States v. Cooper*, 767 F.3d 721, 727 (7th Cir. 2014). An agreement to distribute "can be established through the parties' relationships and conduct," including with evidence that the parties "embraced the conspiracy's criminal objective" or "had some appreciable ability to guide the destiny of the drugs." *Id.* (internal quotations and alterations omitted). In other words, "[t]he government must demonstrate an understanding— explicit or implicit—among co-conspirators to work together to distribute drugs to third parties." *United States v. Speed*, 656 F.3d 714, 717 (7th Cir. 2011).

Mr. Jones argues primarily that the evidence did not establish any more than a buyer–seller relationship between him and his cousin, Ms. Smith. At the outset, however, that argument is not responsive to the evidence that a conspiracy existed at least between Mr. Jones and his girlfriend, Ms. Rowland, which would have independently supported a conviction. There was ample evidence showing that Mr. Jones and Ms. Rowland were working together in the distribution of methamphetamine. For example, when Ms. Smith picked up the two ounces of methamphetamine for the last transaction on August 30, Ms. Rowland gave her the methamphetamine after Mr. Jones said to "get her what she need." [DE 185 p. 103]. She also gave the money to Mr. Jones. The fact that Ms. Rowland handled the drugs and Mr. Jones handled the money shows that they were working together in distributing methamphetamine, which is the essence of a conspiracy. *See Speed*, 656 F.3d at 719.

Other evidence likewise shows that Mr. Jones and Ms. Rowland were working together. Ms. Smith testified that her role was to hook up buyers with "Jen-nai and Johnny," [DE 185 p. 77], that she would contact both of them to arrange transactions, *id.* p. 86, and that Mr. Jones would tell Ms. Rowland to give her the drugs she needed, *id.* p. 87. And though she testified that Ms. Rowland was the one who would give her the drugs, *id.* p. 85, she also testified that when she wanted more work, she texted Mr. Jones to ask to be put on "his payroll," *id.* p. 92. The evidence was not limited to Ms. Smith's testimony, either. Officers testified that after observing Ms. Smith meet with Mr. Jones and Ms. Rowland to pick up more drugs, they followed a car that Mr. Jones was driving, with Ms. Rowland in the passenger seat. The car parked in a mall parking lot, where officers observed a suspected sale of methamphetamine between Mr. Jones' car and another car. After arresting them, officers found a large amount of cash in Mr. Jones' pockets (including the buy money from Ms. Smith), a small amount of methamphetamine and a loaded

pistol in Ms. Rowland's purse, and a large amount of drugs and paraphernalia in the back seat. Also, Mr. Rowland had recently sent Mr. Jones a picture of a firearm next to a large amount of cash, along with the text, "Meet the newest member of our family." That likewise suggests that Mr. Jones and Ms. Rowland were working in concert in their drug trafficking.

The evidence was also sufficient to show that Ms. Smith was part of the conspiracy, not just a buyer. Though again, Mr. Jones could have been found guilty even if the conspiracy included only him and Ms. Rowland. *See United States v. Willis*, 868 F.3d 549, 556 (7th Cir. 2017) (noting that it is "equally illegal for two to conspire together as for three or more to do so"). Ms. Smith testified that her role was to find people who wanted to buy drugs and to hook them up with Mr. Jones and Ms. Rowland. [DE 185 p. 77]. That shows that she was trying to help those two in their distribution, not merely buying drugs that she was reselling on her own. She also testified that Mr. Jones and Ms. Rowland would tell her how much to charge, and that after the sales, she would turn back the money and Ms. Rowland would hand her back her payment. *Id.* p. 87. That likewise shows that Ms. Smith was working as part of Mr. Jones' and Ms. Rowland's conspiracy, not just buying from them.

In sum, the evidence amply supported the jury's finding that Mr. Jones was guilty of conspiring to distribute over 50 grams of methamphetamine. A motion under Rule 29 would thus have been denied, as would have a challenge to the sufficiency of the evidence on appeal. Thus, neither trial counsel nor appellate counsel were ineffective for failing to raise that argument, and Mr. Jones is not entitled to relief on that basis.

## B.    Trial Counsel

Mr. Jones also argues that his trial counsel was ineffective for failing to move to suppress evidence found in a search of his cell phone. He claims that counsel should have argued that the search warrant was not supported by probable cause, and that the affiant omitted material facts

from the warrant application. When a defendant's claim of ineffectiveness is based on counsel's failure to file a motion to suppress, a defendant must "prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005); *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017). Mr. Jones has not done so, as the warrant was amply supported by probable cause.

A search warrant can issue if an affidavit "presents a total set of circumstances which create a 'fair probability' that a search will uncover evidence of a crime." *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In deciding a motion to suppress the fruits of a search warrant, courts "assess whether the issuing judge had a 'substantial basis' for concluding that there was probable cause." *Id.* (quoting *Gates*, 462 U.S. at 238). Courts also give "'great deference' to the issuing judge's finding of probable cause." *Id.* (quoting *United States v. Fifer*, 863 F.3d 759, 764 (7th Cir. 2017)); *see also United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010) ("We afford great deference to the decision of the judge issuing the warrant, and we will uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." (quotations omitted)).

The affidavit here contained abundant support for a finding that a search of the phone was likely to uncover evidence of a crime. The affidavit first described the controlled buy that officers conducted with Ms. Smith on August 30. It noted that before selling ounces of methamphetamine, Ms. Smith met with two individuals in South Bend, later identified as Mr. Jones and Ms. Rowland. It also described how officers then trailed Mr. Jones' car to a mall parking lot, where it pulled up next to another car and officers observed a suspected sale of drugs. The affidavit continued, noting that officers then stopped Mr. Jones' vehicle and found

him in possession of a large amount of currency. They also found currency, a pistol, and drugs in Ms. Rowland's purse, plus dealer quantities of methamphetamine and marijuana in the car. In an interview, Ms. Smith identified Ms. Rowland as her source for methamphetamine and said that Mr. Jones was also involved in the sales. Officers also verified that Ms. Smith's phone had communicated with both Mr. Jones' and Ms. Rowland's cell phones. The officer thus sought permission to search those phones, as he knew from his training and experience that drug traffickers often use cell phones to facilitate drug deals, among other purposes.

These facts provided ample reason to believe Mr. Jones' cell phone would contain evidence of a crime. They first support a finding that a crime had occurred—officers bought ounces of methamphetamine from Ms. Smith, observed Mr. Jones take part in a suspected sale, and found drugs in his car. They also show that Mr. Jones was involved in that trafficking—he met with Ms. Smith shortly before her sale, she told officers he was involved, and officers found him in possession of a large amount of cash and drugs shortly thereafter. The facts in the affidavit also give reason to believe that Mr. Jones' phone would contain evidence of those crimes—the officer stated that drug traffickers often use cell phones to facilitate drug deals, Mr. Jones met with Ms. Smith just prior to the sale, giving reason to believe they may have communicated to facilitate that meeting, and officers also observed Mr. Jones' car exchange drugs for money with someone in another car, which suggests the sale was prearranged. On top of that, the fact that Mr. Jones was found in possession of a large amount of cash and drugs would support a search of his phone, given the officer's statement that drug traffickers often use their phones for multiple purposes in support of their trafficking.

Mr. Jones argues that these facts are insufficient because they do not show that a crime was committed with his cell phone. The question, however, is not whether the item to be

searched was used to commit a crime, but whether it contains evidence of a crime. *Haynes*, 882 F.3d at 665. This argument is factually inaccurate, too. As just discussed, the affidavit provided ample reason to believe that Mr. Jones used his cell phone in furtherance of his trafficking. Probable cause does not require certainty, only a reasonable likelihood that the search will uncover evidence of wrongdoing. *Aljabari*, 626 F.3d at 944.

Mr. Jones also contests the search warrant on the ground that the officer omitted material facts from the affidavit. He thus argues that his attorney should have sought a *Franks* hearing. A motion to suppress on that basis would have been equally insubstantial, though. The first two alleged omissions actually were included in the warrant affidavit. Mr. Jones argues that the affidavit should have stated that Ms. Smith identified Ms. Rowland—not Mr. Jones—as the source of her methamphetamine. But the affidavit did say that, noting that a detective "interviewed Smith and Smith identified Rowland as the source supplier for methamphetamine and Jones as being involved in the sales of methamphetamine." [DE 215 p. 18]. Mr. Jones also argues that the affidavit should have disclosed that officers had already searched two vehicles and his hotel room. Again, the affidavit did include those details, noting that officers had searched a silver 2008 Chrysler 300, a tan Cadillac Escalade, and a hotel room. *Id.* Finally, Mr. Jones argues that the affidavit should have disclosed that Ms. Smith was Mr. Jones' cousin. That detail would have had no affect on the existence of probable cause, though, as it would not change the fact that they were dealing methamphetamine together or the likelihood that they communicated about those sales with their phones.

For those reasons, any motion to suppress evidence gathered through the search of Mr. Jones' cell phone would have been insubstantial and would have been denied. Counsel was not ineffective for declining to file such a motion, nor did Mr. Jones suffer any prejudice.

Accordingly, the Court rejects Mr. Jones' claim that he received ineffective assistance of trial counsel.

## C.     Appellate Counsel

Mr. Jones finally asserts that he received ineffective assistance from his appellate counsel. He argues that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence, but that argument would have been frivolous for reasons already discussed. Attorneys are not required to raise frivolous arguments on appeal, *see Anders v. California*, 386 U.S. 738 (1967), and counsel was not ineffective in choosing to challenge Mr. Jones' sentence on appeal where there was no conceivable basis for challenging his conviction, *see Walker v. Griffin*, 835 F.3d 705, 709 (7th Cir. 2016).

Mr. Jones last claims that appellate counsel was ineffective for failing to argue on appeal that his trial counsel was ineffective. That argument would have failed on its merits for the reasons already discussed. This claim fails for a more fundamental reason, too, which is that the proper way to raise a claim of ineffective assistance of trial counsel is in a motion under § 2255, not in a direct appeal. The record on appeal will almost never have been developed on the question of whether trial counsel was ineffective, so it is nearly impossible for an ineffective-assistance-of-trial-counsel claim to succeed on a direct appeal. *United States v. Cates*, 950 F.3d 453, 456–57 (7th Cir. 2020). And if a defendant chooses to assert that argument on direct appeal and loses (as they almost certainly will), the defendant cannot make the argument again in a motion under § 2255. *Id.* Defendants thus have everything to lose and nothing to gain by arguing ineffective assistance on a direct appeal. *Id.* For that reason, the Seventh Circuit has "repeatedly warned defendants against bringing ineffective-assistance claims on direct appeal." *Id.* at 457 (collecting cases). Mr. Jones' appellate counsel thus acted prudently in declining to argue

ineffective assistance on direct appeal. His claim for ineffective assistance of appellate counsel thus fails.

**D.     Certificate of Appealability**

The Court also declines to issue a certificate of appealability. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). For the reasons the Court already discussed in denying the motion, the Court does not believe that the resolution of this motion is debatable or that the issues deserve encouragement to proceed further.

The Court advises Mr. Jones, though, that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. If Mr. Jones wishes to appeal this judgment, a notice of appeal must be filed within 60 days after the judgment is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006).

## IV.  CONCLUSION

The Court DENIES Mr. Jones' motion under § 2255 [DE 215] and DENIES the issuance of a certificate of appealability. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: March 27, 2020

       _____/s/ JON E. DEGUILIO_____
       Judge
       United States District Court